**SO ORDERED: March 18, 2016.**



**Basil H. Lorch III**
**United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| Eastern Livestock Co., LLC, | ) | Case No. 10-93904-BHL-11 |
|     Debtor. | ) | |
| _____ | ) | |
| | ) | |
| James A. Knauer, Chapter 11 Trustee | ) | |
| Of Eastern Livestock Co., LLC, | ) | |
|     Plaintiff and Counter-Defendant, | ) | |
| | ) | |
|     v. | ) | |
| | ) | |
| | ) | |
| Stephen N. Kitchens a/k/a/ | ) | Adv. Proc. No. 13-59021 |
| Steve Kitchens  d/b/a/ Buckhorn Cattle, | ) | |
|     Defendant and Counter-Plaintiff. | ) | |

### ORDER DENYING DEFENDANT'S MOTION TO DISMISS

        The Trustee, James A. Knauer (the "Trustee") initiated this adversary proceeding on May 1, 2013, by filing the original complaint (the " Original Complaint") which was later amended (the "Amended Complaint") on July 10, 2014.  It now comes before the Court on a **Motion to Dismiss** (Doc. 57) which was filed by Defendant, Stephen N. Kitchens ("Kitchens") on August 4, 2014. The matter was fully briefed by October 13, 2014, and was taken under advisement at

1

that time.  After considering the foregoing, and for the reasons stated hereinbelow, the Court finds that Kitchens' Motion to Dismiss should be **DENIED**.

<u>BACKGROUND</u>

Eastern Livestock Co, LLC ("ELC" or the "Debtor") is a company organized under the laws of Indiana with its principal place of business in New Albany, Indiana.  It ceased operations in November of 2010 when its banking accounts were frozen and involuntary bankruptcy proceedings were initiated against it.  Prior to that time, ELC was doing business as a livestock dealer.  This adversary proceeding stems from the loss of ELC cattle which were in Kitchens' custody and care in Bowling Green, Kentucky.  The Trustee, in his Original Complaint, asserted claims for (1) breach of promissory note, (2) recovery on loans and advances, and (3) unjust enrichment, all of which were based on monies owed to ELC for the death of cattle in Kitchens' custody around January 15, 2008.  In discovery, the Trustee learned that the indebtedness which he sought to recover from Kicthens was owed not pursuant to a promissory note but was instead owed pursuant to an alleged unwritten agreement between ELC and Kitchens for the feed and care of ELC cattle (the "Pasture Agreement").  The Trustee then moved the Court for leave to amend the complaint based on this new information.  The Court granted the Trustee's motion and ordered that the Amended Complaint relate back to the filing of the Original Complaint under Fed. R. Civ. Pro. 15(c)(2).

The Amended Complaint asserts two claims arising out of the Pasture Agreement.  Under the terms of that Agreement, Kitchens was obligated to provide feed, water, medicine, and veterinarian care for ELC cattle on his pasture land in Bowling Green, Kentucky.  In exchange for such "background" services, ELC would pay Kitchens a yardage fee of $0.35 per day per head of cattle, additional compensation, and reimbursement for hay and medicine costs.  Kitchens would also be responsible for compensating ELC for any death loss above 6% of ELC cattle.

According to the Amended Complaint, ELC learned of the death of 37.68% (404 of 1,072) of its cattle under Kitchens' care in January 2008.  Kitchens was to return a certain number of

2

cattle to ELC during that month but instead Kitchens informed ELC that cattle had been stolen. Based on Kitchens' representation, ELC reported the theft of about 100 head of cattle to Kentucky State Police on January 22, 2008, and then sent an agent to Kitchens' property to investigate the theft. ELC discovered that 100 head of cattle had not been stolen, but in actuality, 404 head of its cattle had died while under Kitchens' care. On or about January 15, 2008, Kitchens and ELC allegedly reached an unwritten settlement agreement whereby Kitchens promised to pay ELC a principal sum of $116,004.24 to compensate ELC for the death loss over 6% (the "Settlement Agreement"). As ELC has never been paid by Kitchens for the lost cattle, the Trustee's Amended Complaint asserts claims for breach of the Pasture Agreement (Count II) and breach of the subsequent Settlement Agreement between the parties (Count I). Kitchens now moves to dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6).[1]

## DISCUSSION

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the sufficiency of the complaint, not to decide the merits. *Triad Assocs., Inc. v. Chicago Hous. Authority*, 892 F.2d 583, 586 (7th Cir. 1989). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

---

[1] Fed. R. Civ. P. 12(b)(6) is applicable in this adversary proceeding pursuant to Fed. R. Bankr. P. 7012(b).

Kitchens has moved to dismiss under Rule 12(b)(6) on the ground that the Trustee's claims for breach of contract are time-barred. In his Motion to Dismiss, Kitchens asserts that (i) the Trustee's claims are time-barred by the five-year Kentucky statute of limitations on oral contracts, which applies pursuant to Indiana's "most significant contacts" test; or, (ii) if not, then the Trustee's claims are time-barred by the five-year Kentucky statute of limitations by way of the Indiana "borrowing" statute; and, (iii) even if the longer six-year statute of limitations of Indiana or Tennessee applies, the Trustee's claims are time-barred because the Amended Complaint does not relate back to the filing of the Original Complaint. The Trustee, in addition to disputing Kitchens' arguments in support of dismissal, suggests that Kitchens' motion should be denied as improper because it is based on an affirmative defense.

While dismissal under Rule 12(b)(6) for noncompliance with the statute of limitations is irregular, a motion to dismiss based on failure to comply with the statute of limitations may be granted where "the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense." *Chicago Bldg. Design, P.C. v. Mongolian House, Inc.*, 770 F.3d 610, 613 (7th Cir. 2014) (quoting *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005)). In other words, the plaintiff must affirmatively plead himself out of court; the complaint must "plainly reveal that [the] action is untimely under the governing statute of limitations." *Id.* The Court does not find Kitchens' motion to be improper.

### A.  The Applicable Statute of Limitations

Although both parties argue that this Motion to Dismiss turns on which statute of limitations applies, neither party raises the unsettled and potentially determinative choice-of-law issue presented here. Both parties assert that the choice-of-law rules of the forum state of Indiana apply in this case, and then they disagree on the proper Indiana choice-of-law test and outcome. The key question, though, is not which Indiana choice-of-law rule applies but whether a bankruptcy court should apply the choice-of-law rules of the forum state in which it sits or the

choice-of-law rules of federal common law.  The two approaches also appear to result in the

application of different statutes of limitation.  As such, the resolution of the question may determine

whether this cause of action, brought more than five years after it arose, should properly proceed.

As a general matter, a federal court sitting in diversity jurisdiction applies the choice-of-

law rules of the state in which it sits.  *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61

S.Ct. 1020, 1022, 85 L.Ed. 1477 (1941).  But the broad and complex jurisdiction exercised by

federal bankruptcy courts arises not from diversity but from federal bankruptcy law and the

Supreme Court has never extended it's holding in *Klaxon* to cases involving bankruptcy courts.

Still, in *Vanston Bondholders Protective Comm. v. Green*, 329 U.S. 156, 67 S.Ct. 237, 91 L.Ed.

162 (1946), the Court seemingly endorsed an independent federal choice of law in bankruptcy

where claims and disputes often have significant contacts in many states, when it observed in

dicta:

> "Obligations ... often have significant contacts in many states, so that the question
> of which particular state's law should measure the obligation seldom lends itself to
> simple solution.  In determining which contact is the most significant in a particular
> transaction, courts can seldom find a complete solution in mechanical formulae of
> the conflicts of law.  Determination requires the exercise of an informed judgment
> in the balancing of all the interests of the states with the most significant contacts
> in order best to accommodate the equities among the parties to the policies of
> those states."

*Id.* at 167.

Since then, courts have diverged on the issue of whether bankruptcy courts should apply

the choice-of-law rules of the forum state or those of federal common law.  The Ninth Circuit has

held that federal common law choice-of-law rules apply in bankruptcy[2] and several bankruptcy

courts have also applied federal common law choice-of-law rules specifically where an action

arises directly under the bankruptcy code.[3]  On the other hand, the Third and Eighth Circuits have

---

[2] *See In re Vortex Fishing Sys*, 277 F.3d 1057, 1069 (9th Cir. 2002); *In re Lindsay*, 59 F.3d 942, 948 (9th Cir. 1995);
*In re SMEC, Inc.,* 160 B.R. 86, 91 (M.D. Tenn. 1993).
[3] *See In re Gulf Fleet Holdings, Inc.*, 491 B.R. 747, 765 (Bankr. W.D. La. 2013) (fraudulent transfer claim under
section 544(b)); *In re Cyrus II P'ship*, 413 B.R. 609 (Bankr. S.D. Tex. 2008) (fraudulent transfer claim under section
544(b)); *In re Segretario*, 258 B.R. 541, 543 (Bankr. D. Conn. 2001)(dischargeability action under section 523(a)(6)).

held that the choice-of-law rules of the forum state apply outright in bankruptcy,[4] while the Second and Fourth Circuits and other courts apply the choice-of-law rules of the forum state in the absence of a significant federal interest.[5]  The Seventh Circuit has not decided the issue.

###   i.   Divergent Choice-of-Law Approaches

One rationale for applying federal choice-of-law rules in bankruptcy cases, as in federal question cases, "is that the risk of forum shopping which is avoided by applying state law has no application because the case can only be litigated in federal court."  *In re Lindsay*, 59 F.3d 942, 948 (9th Cir. 1995).  The Ninth Circuit in *Lindsay* went on to note that "[t]he value of national uniformity of approach need not be subordinated, therefore, to differences in state choice of law rules."  *Id.*  Courts have also applied a federal common law choice-of-law approach in bankruptcy cases finding the cause of action to be grounded in important federal policy (i.e. a trustee's fraudulent conveyance avoidance action under section 544(b)).[6]  Courts applying federal choice-of-law rules in bankruptcy generally follow the Restatement (Second) of Conflict of Laws, which employs a "most significant contacts" rule in many contexts.

Other courts have applied forum state choice-of-law rules in bankruptcy cases.  The Third and Eighth Circuits, for example, have held that a bankruptcy court applies the choice-of-law rules of the forum state in which it sits without expounding much support.[7]  The Second and Fourth Circuits have set forth more rationale in determining that a bankruptcy court should apply the choice-of-law rules of the forum state absent a significant federal policy or interest.[8]  The Fourth Circuit, in *In re Merritt Dredging Co., Inc.*, 839 F.2d 203 (4th Cir. 1988), stated the following:

---

[4] *See In re Teleglobe Commc'n*, 493 F.3d 345, 358 (3d Cir. 2007); *In re Payless Cashways*, 203 F.3d 1081, 1084 (8th Cir. 2000).
[5] *See In re Gaston & Snow*, 243 F.3d 599, 601–02 (2d Cir.2001); *In re Merritt Dredging Co., Inc.*, 839 F.2d 203, 206 (4th Cir. 1988); *In re Int'l Mgmt. Associates, LLC*, 495 B.R. 96, 105 (Bankr. N.D. Ga. 2013); *In re Kaiser Grp. Int'l Inc.*, No. 00-02263-MFW, 2010 WL 3271198, at *4 (Bankr. D. Del. Aug. 17, 2010); *ASARCO LLC v. Americas Min. Corp.*, 382 B.R. 49, 61 (S.D. Tex. 2007).
[6] *See In re Gulf Fleet Holdings, Inc.*, 491 B.R. at 765; *In re Cyrus II Partnership*, 413 B.R. at 614.
[7] *See In re Teleglobe Commc'n*, 493 F.3d at 358; *In re Payless Cashways*, 203 F.3d at 1084.
[8] *See In re Gaston & Snow*, 243 F.3d at 601-02; *In re Merritt Dredging Co., Inc.*, 839 F.2d at 206.

The argument for applying the *Klaxon* rule to state law questions arising in bankruptcy cases is compelling.  A uniform rule under which federal bankruptcy courts apply their forum states' choice of law principles will enhance predictability in an area where predictability is critical. Most important, such a rule would accord with the model established by *Erie* and *Klaxon*.  Both those cases make clear that federal law may not be applied to questions which arise in federal court but whose determination is not a matter of federal law: "[e]xcept in matters governed by the Federal Constitution or by Acts of Congress, the law to be applied in any case is the law of the State."  Such is the case with questions regarding the extent of a bankruptcy debtor's property interests.  "Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding."  .  .  .  Because no overwhelming federal policy requires us to formulate a choice of law rule as a matter of independent federal judgment, we adopt the choice of law rule of the forum state, South Carolina.

*Id.* at 206 (citations omitted).

In another leading case, the Second Circuit began its analysis of the issue by recognizing that federal choice-of-law rules are a species of federal common law, the creation of which is severely limited and requires a "significant conflict between some federal policy or interest and the use of state law."  *In re Gaston & Snow*, 243 F.3d 599, 606 (2d Cir. 2001) (quoting *Atherton v. FDIC*, 519 U.S. 213, 218 (1997)).  After recognizing the concerns of the Ninth Circuit and other pro-federal common law courts, including the federal interest in national uniformity in bankruptcy law and the risk of interstate bankruptcy forum shopping, the Second Circuit explained:

We recognize the concerns expressed by these courts, but do not believe they implicate significant enough federal interests to justify the creation of federal common law in this case.  While an interest in uniformity can justify the creation of federal common law, *Klaxon* rejected the need for uniformity as a justification for displacing state conflicts rules.  Regarding the federal interest in avoiding forum shopping, we believe there are only a limited number of cases in which this interest is implicated.  Here, for example, where the debtor was brought into bankruptcy court through an involuntary petition, it is difficult to argue that any forum shopping occurred.

*Id.* (citations omitted).

That court then cited the policy goals expressed by the Fourth Circuit in *Merritt Dredging* as further support of its conclusion that bankruptcy courts should apply the choice-of-law rules of the forum state unless the case implicates important federal bankruptcy policy.  *Id.* at 606-07.

Other courts have adopted this approach as well[9] and, it should be noted, the underlying rationale applies with greater force when the cause of action originates exclusively in state law and involves no issues of federal law.

### ii.    Open Question in the Seventh Circuit

Though it has acknowledged the split in authority as to whether federal or forum choice-of-law rules apply in bankruptcy, the Seventh Circuit has not reached the question in cases where both approaches would produce the same choice-of-law result.  *See In re Jafari*, 569 F.3d 644, 649 (7th Cir. 2009); *In re Morris*, 30 F.3d 1578, 1582 (7th Cir. 1994).  The Debtors in *Jafari* resided in Wisconsin and objected to proofs of claim for gambling debts which arose in Nevada.  *Id*. at 646.  If Wisconsin substantive law applied to the dispute, the gambling debts would be unenforceable pursuant to the Wisconsin anti-gaming statute and the claims would be disallowed.  If Nevada substantive law applied, the debts would be enforceable and the claims would be allowed.  On appeal, the Seventh Circuit was presented with the question of whether the forum state of Wisconsin or federal common law supplied the choice-of-law rules.  Having determined that both Wisconsin and a federal choice-of-law analysis would result in the application of Nevada law, the court noted that there was no need to "resolve whether federal or forum state choice-of-law rules apply in bankruptcy, because our answer to that question would not matter to the outcome of this case."  *Id*. at 650.  The Seventh Circuit thus affirmed the bankruptcy court's conclusion without ruling on the bankruptcy choice-of-law rules issue.  *Id*. at 651.

### iii.    This Court's Approach

In this case, unlike *Jafari*, federal common law principles and a forum state choice-of-law analysis likely lead to different results requiring this Court to decide between the two.  The complicating factor here is that the choice-of-law question concerns a statute of limitations rather

---

[9] *See In re Int'l Mgmt. Associates, LLC*, 495 B.R. at 105; *In re Kaiser Grp. Int'l Inc.*, No. 00-02263-MFW, 2010 WL 3271198, at *4; *ASARCO LLC*, 382 B.R. at 61.

than traditional substantive law.  Indiana law and federal common law treat statutes of limitations differently in the choice-of-law context.  In Indiana, as in many other states, statutes of limitations are considered procedural in nature for choice-of-law purposes.  *Bitler Inv. Venture II, LLC v. Marathon Ashland Petroleum, LLC*, 799 F. Supp. 2d 858, 889 (N.D. Ind. 2011).  Given their designation as procedural, Indiana's choice-of-law rules thus dictate that the forum state supplies the applicable statute of limitations where there is conflict.  *Id.*  Following a forum state choice-of-law analysis would therefore result in the application of the longer, six-year Indiana statute of limitations.  Ind. Code § 34-11-2-7.

An analysis under federal common law choice-of-law principles, though not so straightforward, would seem to favor the Kentucky statute of limitations.  As mentioned above, the federal common law generally follows the Restatement (Second) of Conflict of Laws.  *See In re Sterba*, 516 B.R. 579, 583 (B.A.P. 9th Cir. 2014); *In re Vortex Fishing Sys., Inc.*, 277 F.3d 1057, 1069 (9th Cir. 2002); *Eli Lilly Do Brasil, Ltda. v. Federal Express Corp.*, 502 F.3d 78, 81 (2nd Cir., 2007); *In re ATA Airlines, Inc.*, No. 08-03675-BHL-11, 2009 WL 701728, at *4 (Bankr. S.D. Ind. Mar. 16, 2009).  Section 142 of the Restatement is devoted to the selection of the appropriate statute of limitations.

Section 142 was revised in 1988 to reflect the emerging shift away from "characteriz[ing] the issue of limitations as *ipso facto* procedural and hence governed by the law of the forum," and toward a "most significant relationship" approach to resolving limitations conflicts.  Restatement (Second) of Conflict of Laws § 142 cmt. e.  "Section 142 provides that, if the forum has a longer statute of limitations that would permit the claim, the longer period should apply unless there is no 'substantial' forum interest and the 'state having a more significant relationship to the parties and the occurrence' would bar the claim."  *Berger v. AXA Network LLC*, 459 F.3d 804, 812 (7th Cir. 2006) (citing Restatement (Second) of Conflict of Laws § 142(2)).

If the Court were to follow section 142 of the Restatement in a federal common law analysis, it seems clear that the shorter, five-year Kentucky statute of limitations would apply in

this case as there is no substantial forum interest and Kentucky has more significant contacts with the Trustee's claims. Ky. Rev. Stat. § 413.120. Yet again, while there is no clear precedent in this Circuit, the Court has declined to adopt section 142 for selecting a state statute of limitations in at least one instance.

In the *Berger* case, the Seventh Circuit determined that when borrowing a state statute of limitations to fill a gap left open in a federal statute, a federal court should select a statute of limitations from the forum state's law unless another state has more significant contacts with the dispute and has a limitations period that is more compatible with the federal policies underlying the federal cause of action. *Berger*, 459 F.3d at 813. But because *Berger* was a traditional federal question case which involved a purely federal cause of action arising under the Employee Retirement Income Security Act, that approach is neither binding nor necessarily instructive in this case. Here, we are faced with breach of contract claims arising under state law, which are now subject to federal jurisdiction by virtue of ELC's bankruptcy.

At any rate, whether the Court were to directly follow section 142 of the Restatement, apply *Berger* to the bankruptcy context, or exercise its independent judgment, Kentucky's more significant contacts with the Trustee's claims seem to strike in favor of the shorter, five-year Kentucky statute of limitations here. And because the forum state choice-of-law analysis and the federal common law analysis lead to different results, it becomes necessary to decide the choice-of-law question.

Considering all of the foregoing, this Court adopts the approach of the Second and Fourth Circuits in concluding that the choice-of-law rules of the forum state should apply absent a significant federal policy or interest. While the Supreme Court suggested in *Vanston* that an independent federal choice-of-law determination based on significant contacts may be appropriate in bankruptcy, those statements were merely dicta. Creation of federal common law requires that "a significant conflict between some federal policy or interest and the use of state law . . . first be specifically shown." *Atherton v. FDIC*, 519 U.S. 213, 218, 117 S.Ct. 666, 136

10

L.Ed.2d 656 (1997).  To read *Vanston* as requiring the use of federal common law choice-of-law principles where there is no substantial federal interest would ignore the Supreme Court's well-established limitations on the creation of federal common law.  *See In re Gaston & Snow*, 243 F.3d at 607.

There is a federal interest in national uniformity in the administration of bankruptcy law but that interest is not so compelling as to justify the creation of federal common law.  *Compare In re Gaston & Snow*, 243 F.3d at 606, *with In re Lindsay*, 59 F.3d at 948.  In deciding *Klaxon*, the Supreme Court rejected federal uniformity as a justification for displacing state choice-of-law rules with a federal "general law" of conflict of laws in the context of diversity jurisdiction.  *Klaxon*, 313 U.S. at 496.  Moreover, the consistent application of forum state choice-of-law rules by bankruptcy courts following the model established by *Erie* and *Klaxon* would produce uniformity and predictability in the administration of bankruptcy law its own right.  *See In re Merritt Dredging Co., Inc.*, 839 F.2d at 206.  And while applying a federal "general rule" to choice-of-law issues in bankruptcy may discourage interstate forum shopping, that interest is not implicated here where ELC was forced into bankruptcy in Indiana by involuntary petition.  *See In re Gaston & Snow*, 243 F.3d at 606.

Furthermore, whereas federal question proceedings necessarily involve important federal interests and policies because they arise under the Constitution or federal law, this case is more akin to a diversity case in which state interests are at the forefront.  The causes of action in this adversary proceeding in ELC's bankruptcy are contract claims arising from an alleged agreement for the backgrounding of cattle.  The Trustee's claims originate exclusively in state contract law and involve no issues of federal law.  Thus, the Court finds that in this case there is not a sufficient federal policy or interest to justify an independent choice of law under federal common law principles.  Given the absence of a significant federal policy or interest, the choice-of-law rules of the forum state of Indiana apply in this adversary proceeding.  This result is supported by *Erie* and *Klaxon*, which "make clear that federal law may not be applied to questions which arise in

11

federal court but whose determination is not a matter of federal law." *In re Merritt Dredging Co. Inc.*, 839 F.2d at 206.

### iv.    Indiana Choice-of-Law Analysis

Under Indiana law, statutes of limitations are considered procedural in nature for choice-of-law purposes. *Bitler Inv. Venture II, LLC v. Marathon Ashland Petroleum, LLC*, 799 F. Supp. 2d 858, 889 (N.D. Ind. 2011); *Bailey v. Skipperliner Indus., Inc.*, 278 F. Supp. 2d 945, 951 (N.D. Ind. 2003) ("Under Indiana law, statutes of limitation are procedural, rather than substantive, and are not subject to parties' choice-of-law disputes.") (citing *JKL Components Corp. v. Insul–Reps, Inc.*, 596 N.E.2d 945, 950 (Ind. Ct. App. 1992)).  Because statutes of limitations are procedural, Indiana's choice-of-law rules dictate that the statute of limitations of the forum state applies where there is a conflict of laws.  *Id.*; *see also Autocephalous Greek–Orthodox Church of Cyprus v. Goldberg & Feldman Fine Arts Inc.*, 717 F. Supp. 1374, 1385 (S.D. Ind. 1989).  Indiana  has a six-year statute of limitations on claims for breach of oral contract.  Ind. Code § 34-11-2-7.

Kitchens contends that, even if the five-year statute of limitations Kentucky is not applicable, the Trustee's claims are still time-barred by way of the Indiana "borrowing" statute. Ind. Code § 34-11-4-2 provides, in pertinent part, when a cause of action ". . . is fully barred by the laws of both of the place where the defendant resides and of the place where the cause of action arose; the bar of the cause of action . . . is a defense."  Kitchens is a resident of Tennessee. Like Indiana, Tennessee has a six-year statute of limitations on claims for breach of oral contract. Tenn. Code § 28-3-109.  In both states, the statute of limitations begins to run when it is evident that the contract has been breached.  *See Bitler,* 653 F. Supp. 2d at 910 (N.D. Ind. 2009) ("Under Indiana's discovery rule, a cause of action accrues, and the statute of limitations begins to run, when a claimant knows or . . . should have known of the injury."); *Phegley v. Phegley*, 629 N.E.2d 280, 283 (Ind. Ct. App. 1994) (holding that where there is an unwritten promise to pay at an indefinite time, the statute of limitations does not begin to run until a reasonable time for

performance has lapsed); *Coleman Mgmt., Inc. v. Meyer*, 304 S.W.3d 340, 348 (Tenn. Ct. App. 2009) (noting that the statute of limitations begins to run when a contracting party first knows or should know that the contract will not be performed).  It follows that if the Trustee's claims are timely in Indiana, then they are also timely in Tennessee where Kitchens resides, and the "borrowing" statute is therefore inapplicable; if untimely in Indiana, the "borrowing" statute is irrelevant.  The Court thus finds that the issue of whether the Indiana "borrowing" statute applies is moot.

### B.  The Timeliness of the Trustee's Claims

A motion to dismiss under Rule 12(b)(6) for noncompliance with the statute of limitations should be granted if the complaint plainly reveals that the action is untimely.  *Chicago Bldg. Design, P.C. v. Mongolian House, Inc.*, 770 F.3d 610, 613 (7th Cir. 2014).  In considering a motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor.  *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011).  Kitchens contends that, even under the Indiana statute of limitations, the Trustee's claims for breach of the Pasture and Settlement Agreements are untimely because the Amended Complaint was filed more than six years after the causes of action arose and the Amended Complaint does not relate back to the filing of the Original Complaint.

As alleged in the Amended Complaint, the Trustee's cause of action for breach of the Pasture Agreement arose sometime in January 2008.  Under the Pasture Agreement, Kitchens was to compensate ELC for any death loss of cattle above 6%.  Kitchens allegedly failed to report a death loss of 37.68% and failed to compensate ELC for that loss over 6%.  With respect to the timing of the events surrounding breach, the Amended Complaint states the following: Kitchens was to return a certain number of cattle to ELC in January of 2008; Kitchens informed ELC that he could not return the cattle because they had been stolen; ELC reported the theft of about 100 head of cattle to Kentucky State Police on January 22, 2008; ELC then sent an agent to Kitchens'

property to investigate, at which time ELC discovered that 404 head of cattle had died while under Kitchens' care; and finally on or about January 15, 2008, ELC and Kitchens entered into the Settlement Agreement for compensation for the lost cattle.  The Court, accepting these facts as true, draws the reasonable inference that ELC discovered a breach of the Pasture Agreement sometime in January 2008, and that the cause of action therefore accrued at or about that time.  Thus, pursuant to the Indiana statute of limitations on claims for breach of oral contracts, ELC or the Trustee had until a corresponding day in January, 2014 to bring an action for breach of the Pasture Agreement.  The Original Complaint was filed on May 1, 2013.  The Court, by the Order Granting Motion to Amend Complaint, has already ruled that the Amended Complaint filed on May 19, 2014 relates back to the filing of the Original Complaint.  As such, the Court finds that the Trustee's Count II claim for breach of the Pasture Agreement is timely because it relates back to the Original Complaint, which was filed months prior to January 2014.

The Amended Complaint alleges that the parties entered into the Settlement Agreement on or about January 15, 2008.  The exact dates of the formation and breach of the Settlement Agreement are not set forth in the Amended Complaint.  Kitchens asserts that the Settlement Agreement is an unwritten demand obligation, for which the cause of action for breach accrued on the same date that the obligation was occurred.  The Trustee contends that the Settlement Agreement is an unwritten promise to pay money at an indefinite time, and that the cause of action for its breach accrued after a reasonable time for performance had lapsed.  The distinction does not matter for the purposes of Kitchens' Motion to Dismiss.  Whether the statute of limitations on this breach of oral contract claim began running on or about January 15, 2008, or sometime thereafter when a reasonable time for performance had lapsed, ELC or the Trustee had at least until January 15, 2014 to bring an action for breach of the Settlement Agreement.  Therefore, the Court finds that the Trustee's Count I claim for breach of the Settlement Agreement is timely because it relates back to the Original Complaint filed in May 2013.

<u>CONCLUSION</u>

A bankruptcy court, absent a significant federal policy or interest, should apply the choice-of-law rules of the state in which it sits.  Under Indiana choice-of-law rules, the Indiana six-year statute of limitations on claims for breach of oral contract is applicable in this case.  Based upon the foregoing, the Court finds that the Trustee's claims for breach of the Pasture and Settlement Agreements are not barred by the six-year Indiana statute of limitations.  The Amended Complaint, which relates back to the filing of the Original Complaint, does not "plainly reveal" that the action is untimely.  Rather, the Amended Complaint states claims for relief that are plausible on their face.  Accordingly, the Court finds that Kitchens' Motion to Dismiss Plaintiff's First Amended Complaint (Doc. 57) should be, and hereby is, **DENIED**.

**IT IS SO ORDERED.**

###